UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: _____

CAROL J. MOLETZ, as Personal
Representative of the ESTATE OF
ROBERT J. BISHOP,

    Plaintiff,

vs.

PAMELA GAIL TROUTMAN, an
individual,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CAROL J. MOLETZ, in her capacity as Personal Representative of the ESTATE OF ROBERT J. BISHOP, through counsel and pursuant to the Federal Rules of Civil Procedure, sues PAMELA GAIL TROUTMAN, upon personal knowledge as to herself and her own acts and experiences and upon information and belief as to all other matters, and alleges as follows:

### NATURE OF ACTION

1. This civil action is filed to recover estate assets following the uncovering of fraudulent financial transfers involving estate funds, and asserts claims for civil theft, fraud, embezzlement, unjust enrichment, negligence, and conversion.

### PARTIES, JURISDICTION, AND VENUE

2. This is an action for damages in excess of $75,000.00, exclusive of interest, attorneys' fees and costs.

3. PAMELA GAIL TROUTMAN ("TROUTMAN" or "Defendant"), is a resident of the State of Georgia, is over the age of eighteen and is otherwise *sui juris*.

4. CAROL J. MOLETZ ("CAROL" or "Plaintiff") is a resident of the State of New York, is over the age of eighteen and is otherwise *sui juris*.

5. This Court has original jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6. This Court has personal jurisdiction over the parties because: (A) Defendant has admitted (through legal counsel) that she "provided … companionship and assistance" to the decedent, ROBERT J. BISHOP ("ROBERT") while he was living in the State of Florida; (B) the parties have conducted business and otherwise consented to personal jurisdiction in this District, and/or (C) the parties are individuals who have sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Estate (as defined below) is being administered in this District, and TROUTMAN engaged in activities that have an effect in this District.

/ / /

/ / /

/ / /

## GENERAL ALLEGATIONS

### A.     Administration of the Robert Bishop Estate.

8. The decedent, ROBERT J. BISHOP ("ROBERT"), was a resident of Pinellas County, Florida.

9. ROBERT had five biological children from his first marriage, and four stepchildren from his second marriage (two of which predeceased him), who are the biological children of his second wife, JOYCE BISHOP ("JOYCE").

10. Plaintiff CAROL is ROBERT's biological daughter.

11. Defendant TROUTMAN was JOYCE's biological daughter and ROBERT's stepdaughter.

12. On or about June 3, 2009, ROBERT executed a valid Last Will and Last Testament ("Robert's Will"), wherein he appointed CAROL to act as the alternate Personal Representative of his estate upon his death. A copy of Robert's Will appointing CAROL is attached hereto as **Exhibit A**.

13. On or about June 11, 2023, ROBERT passed away from senile brain degeneration. ROBERT was predeceased by his wife, JOYCE BISHOP ("JOYCE"), who passed away in December of 2021. A copy of ROBERT's Death Certificate with Cause of Death is attached hereto as **Exhibit B**.

14. On or about November 27, 2024, in her capacity as the nominated Personal Representative of the ESTATE OF ROBERT J. BISHOP (the "Estate"), CAROL filed a Petition for Formal Administration of the Estate in the Sixth Judicial Circuit Court in and for Pinellas County, Florida, in a case captioned ESTATE OF

ROBERT J. BISHOP and bearing case number: 24-011274-ES (the "Probate Case"). A copy of the Petition for Formal Administration is attached hereto as **Exhibit C**.

15. On or about January 22, 2025, the Court in the Probate Case entered an Order formally admitting Robert's Will into probate and appointing CAROL as the personal representative of ROBERT's Estate (the "Order Admitting Will to Probate and Appointing Personal Representative"). A copy of the Order Admitting Will to Probate and Appointing Personal Representative is attached hereto as **Exhibit D**.

16. On February 13, 2025, the Court in the Probate Case issued Letters of Administration ("Letters"), appointing CAROL as the Personal Representative of ROBERT's Estate. A copy of the Letters is attached hereto as **Exhibit E**.

17. In the course of administering ROBERT's Estate, CAROL discovered that TROUTMAN had stolen, fraudulently transferred, and otherwise received money and other assets belonging to ROBERT and/or his estate, which forms the basis for the claims asserted herein.

**B.  TROUTMAN steals money from ROBERT's Bank Accounts.**

18. ROBERT co-owned a joint account with his late wife, Joyce, at Truist Bank, N.A. ending in 3821 (the "Individual Truist Account"), which became ROBERT's individual account upon Joyce's passing.

19. ROBERT held a second individual account at Truist Bank, N.A., account ending in 3888 (the "Joint Truist Account").

20. On or between April 26, 2022 and May 25, 2022, TROUTMAN was made a co-owner of the Joint Truist Account, and she continued to be a co-owner of that

account until ROBERT's death.

21. ROBERT also co-owned a joint account with TROUTMAN at Southern First Bancshares, Inc. ending in 0383 (the "Southern First Account") which, upon information and belief, TROUTMAN opened within days of Joyce's passing. At that time, Southern First received the opening monies via verbal transfer on or about the time ROBERT was hospitalized, inter alia for depression. ROBERT only authorized the opening of the Southern First Account and allowed TROUTMAN to be on the account for the limited purpose of facilitating the payment of his bills.

22. Prior to his passing, ROBERT had informed his daughter, BARBARA RAGUCCI, that because TROUTMAN worked at a bank, she was assisting ROBERT with paying bills.

23. Unfortunately, however, TROUTMAN used and abused her access to the accounts to steal money from ROBERT.

24. Specifically, Truist Bank statements show that, at or about the time when TROUTMAN became a co-owner of the Joint Truist Account, TROUTMAN started transferring money out of ROBERT's Individual Truist Account and into the Joint Truist Account, including, *inter alia*, ROBERT's social security income.

25. After ROBERT passed, TROUTMAN continued to steal, misappropriate and otherwise fraudulently transfer money belonging to ROBERT's estate.

26. At all times relevant, TROUTMAN has not possessed a Power of Attorney or other legal authority granting her the right to act on behalf of ROBERT at the time of said transfers.

27. TROUTMAN therefore stole monies belonging both to ROBERT (before he passed away) and the Estate (after ROBERT's passing).

**C.   TROUTMAN steals proceeds due under ROBERT's Insurance Policy.**

28. Prior to his passing, ROBERT also maintained a long-term care policy with Allianz Insurance Company ("Allianz"), under a policy account ending in 6625 (the "Allianz Policy").

29. Upon information and belief, TROUTMAN stole proceeds of the Allianz Policy that were otherwise due and payable to ROBERT. Specifically, upon information and belief, in May of 2023, TROUTMAN completed an Insurance Company Direct Deposit Form, requesting that any proceeds due to ROBERT under the Allianz Policy be deposited directly into the Southern First Account.

30. TROUTMAN coordinated with attorney Maxie Donald Reddish II, Esq. ("Attorney Reddish") [Fla. Bar No. 165565], ROBERT's Power of Attorney, to have Attorney Reddish sign a Direct Deposit Power of Attorney Form (the "Direct Deposit Form") to facilitate the transaction.

31. On or about May 15, 2023, Allianz sent a letter regarding the Allianz Policy that was addressed to ROBERT (the "Allianz Letter") but was mailed to TROUTMAN's address. TROUTMAN requested that Allianz send all correspondence addressed to ROBERT to TROUTMAN's address instead of his own address.

32. The Allianz Letter noted that Allianz had received the Direct Deposit Form and requested a copy of a voided check to facilitate the deposits.

33. From or about June 26, 2023 to August 25, 2023, after ROBERT's death,

Allianz direct deposited into TROUTMAN's Southern First Account, at least the amount of $100,921.67, which was otherwise due and payable to ROBERT's Estate, as follows: (A) 06/26/2023 – deposit of $15,357.65; (B) 06/26/2023 – deposit of $11,847.33; (C) 06/28/2023 – deposit of $12,286.12; (D) 06/30/2023– deposit of $26,766.19; (E) 07/03/2023, a deposit of $23,694.66; (F) 07/26/2023, a deposit of $4,387.90; and (G) 08/25/2023 – deposit of $6,581.82.

**D.    TROUTMAN steals from ROBERT's investments.**

34.    ROBERT held 100 shares in a Principal Financial Group, Inc., with (the "PFG Shares"), which were managed by Computershare Investor Center ("Computershare") via an account ending in 8420.

35.    After ROBERT passed away, Computershare issued a check in the amount of $223.59 on account of the PFG Shares, which was made payable to "THE ESTATE OF ROBERT BISHOP, IN CARE OF PAMELA TROUTMAN" (the "Computershare Check").

36.    The Shares, the Computershare Check, and any other benefits associated therewith constitute the sole property of ROBERT and/or his Estate.

37.    Upon information and belief, TROUTMAN by means of deception, fraud, or other improper device caused Computershare to issue the Computershare Check to her without the knowledge or consent of ROBERT or his Estate.

38.    TROUTMAN had regular access to ROBERT's residence and bank accounts and held herself out to be an agent of ROBERT, despite not having been granted legal authority to do so.

39. TROUTMAN had actual or constructive knowledge of ROBERT's advanced age and vulnerability. As a result, Robert sought assistance from Troutman in managing his financial affairs in light of her experience in the banking industry.

40. TROUTMAN has the knowledge and means to facilitate the fraudulent transactions described hereinabove because: (A) TROUTMAN has experience in the finance industry, having worked as a Senior Vice President for Southern First Bank, and as a Senior Financial Specialist for Wells Fargo Bank, N.A.; and (B) TROUTMAN was fired by Wells Fargo Bank because she "electronically signed the WFNA online banking consent agreement, online access agreement and created the pin for debit/ATM <u>for customers who were not present</u>." (emphasis added).

41. TROUTMAN's theft and fraudulent misconduct began prior to ROBERT's passing and continued after his passing.

42. In connection with the foregoing, TROUTMAN acted in a reckless manner, and engaged in misleading, deceptive and unfair trade practices.

43. As a direct and proximate cause of the foregoing, ROBERT and/or his Estate have incurred significant damages.

44. In her capacity as the Personal Representative of ROBERT's Estate, CAROL has retained the legal services of SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A. to represent the Estate in this cause and has agreed and become obligated to pay it a reasonable fee for its services.

45. All conditions precedent to the maintenance of the causes of action set forth herein have occurred, been waived or excused.

## COUNT I – CIVIL THEFT

46. CAROL repeats and realleges each and every allegation contained in paragraphs 1 through 45 above, as if more fully set forth herein.

47. Within the meaning of Section 812.014, Florida Statutes, TROUTMAN knowingly obtained or used, or endeavored to obtain or use, property of ROBERT and his Estate with felonious intent to deprive them of their right to or a benefit from such property or to appropriate said property for TROUTMAN's own use or for the use of another person not entitled to said property.

48. Before filing this action, Plaintiff made written demand to TROUTMAN for treble the amount of damages.

49. TROUTMAN did not comply with such written demand within 30 days after her receipt thereof.

50. Pursuant to Florida Statutes § 772.11, CAROL is entitled to recover treble damages, as well as attorneys' fees and costs.

WHEREFORE, CAROL demands judgment on this count against TROUTMAN for treble damages, together with reasonable attorney's fees, costs, and such further relief as may be just and proper.

## COUNT II – CONVERSION

51. CAROL repeats and realleges each and every allegation contained in paragraphs 1 through 45 above, as if more fully set forth herein.

52. At all times material hereto, ROBERT was the lawful owner of the funds held in his bank account, and had the sole right to possess, control, and use those

funds.

53. At all times material hereto, ROBERT was the lawful owner of the Allianz Policy benefits, and had the sole right to possess, control, and use those funds.

54. Without lawful authorization, TROUTMAN wrongfully transferred and took possession of ROBERT's funds, including ROBERT's accounts and funds, including but not limited to the Joint Truist Account, Individual Truist Account and ROBERT's Allianz Policy benefits. In addition, TROUTMAN caused a joint account to be opened at Southern First Bank, where she held a position of Senior Vice President, which account was entirely funded with Robert's individual funds, and she continued to fund that account with Robert's individual funds and assets, both during his life and for a period of time after his death.

55. While some of the funds in those accounts were used to pay for ROBERT's care, a significant portion of those funds remained unused at the time of his death. Upon ROBERT's death, TROUTMAN became the sole owner of the Joint Truist Account and the Southern First Account by right of survivorship.

56. TROUTMAN's actions interfered with ROBERT and ROBERT's Estate's right to possess the funds.

57. As a result, ROBERT suffered significant economic harm and loss of assets. Upon ROBERT's passing, those losses now affect his estate and rightful beneficiaries.

58. TROUTMAN's retention of those funds constitutes an unauthorized and wrongful act of conversion.

WHEREFORE, CAROL demands judgment on this count in her favor and against TROUTMAN for damages, together with interest, costs, reasonable attorney's fees, and such further relief as may be just and proper.

### COUNT III – EMBEZZLEMENT

59. CAROL repeats and realleges each and every allegation contained in paragraphs 1 through 45 above, as if more fully set forth herein.

60. TROUTMAN stood in a position of trust and confidence such that a fiduciary relationship existed between her and ROBERT.

61. TROUTMAN was initially given possession of ROBERT's property through their fiduciary relationship.

62. ROBERT trusted that TROUTMAN could properly manage his financial affairs because she worked for a bank.

63. TROUTMAN intentionally and fraudulently embezzled and otherwise converted ROBERT's property without ROBERT's permission for her benefit.

64. TROUTMAN intended to deprive ROBERT and ROBERT's Estate.

65. ROBERT and his Estate have been directly and proximately damaged as a result of such embezzlement by TROUTMAN.

WHEREFORE, CAROL demands judgment on this count against TROUTMAN for damages, together with interest, costs, attorneys' fees, and such further relief as may be just and proper.

### COUNT IV – FRAUD

66. CAROL repeats and realleges each and every allegation contained in

paragraphs 1 through 45 above, as if more fully set forth herein.

67. Prior to his death, TROUTMAN made misrepresentations of material fact to ROBERT, including among other things, that she would properly manage ROBERT's financial affairs and that she would not convert, embezzle, or otherwise use ROBERT's property without his express authorization.

68. TROUTMAN received monies belonging to ROBERT which were intended to be delivered to ROBERT with the intent of converting the same to her own use.

69. TROUTMAN knew or had reason to know that the representations she made to ROBERT regarding her management of financial affairs were materially false at the time she made them.

70. TROUTMAN knew that the above transactions would ultimately benefit her as monies left in the joint Accounts after ROBERT's death would become hers.

71. ROBERT relied on TROUTMAN's representations and reasonably believed that TROUTMAN would properly manage his financial affairs.

72. As a result, ROBERT suffered significant economic harm and loss of assets. Upon ROBERT's passing, those losses now affect his estate and rightful beneficiaries.

WHEREFORE, CAROL demands judgment on this count in her favor and against TROUTMAN for damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as is just, equitable and proper.

/ / /

## COUNT V – NEGLIGENCE

73. CAROL repeats and realleges each and every allegation contained in paragraphs 1 through 45 above, as if more fully set forth herein.

74. TROUTMAN owed a duty to act in a reasonable and honest manner in connection with handling ROBERT's financial affairs.

75. TROUTMAN materially breached said duty by failing to act in an honest manner when handling ROBERT's financial affairs.

76. As a direct and proximate result thereof, ROBERT and ROBERT's Estate have suffered damages.

WHEREFORE, CAROL demands judgment on this count against TROUTMAN for damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as is just, equitable and proper.

## COUNT VI - UNJUST ENRICHMENT

77. CAROL repeats and realleges each and every allegation contained in paragraphs 1 through 45 above, as if more fully set forth herein.

78. ROBERT conferred a valuable benefit upon TROUTMAN by granting her access to his accounts to help with his financial affairs.

79. TROUTMAN had knowledge of such benefits and voluntarily accepted and retained the benefit conferred.

80. As a direct and proximate result of such conduct, TROUTMAN has been unjustly enriched.

81. Based on TROUTMAN's conduct, the circumstances are such that it

would be unjust and inequitable to allow TROUTMAN to retain such benefit without paying the reasonable value thereof.

WHEREFORE, CAROL demands judgment on this count in her favor and against TROUTMAN for damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as is just, equitable and proper.

## RESERVATION OF RIGHT TO AMEND
## TO PLEAD PUNITIVE DAMAGES

82. CAROL hereby reserves the right, pursuant to Fla. Stat. §768.72 and applicable law to seek punitive damages against TROUTMAN herein.

## DEMAND FOR JURY TRIAL

83. CAROL demands trial by jury on all counts so entitled.

DATED: August 12, 2025.

/s/ Matthew S. Kish
**MATTHEW S. KISH, ESQ.**
Fla. Bar No. 491640
Primary email: mkish@sbwh.law
Secondary email: mlahrzal@sbwh.law
*Attorney for Plaintiff, CAROL J. MOLETZ*
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone: 561-477-7800
Facsimile: 561-477-7722